OPINION. Disney, Judge-. The primary question presented to us is simple: Was the $30,130 a dividend (to the extent of corporate earnings, $27,972.97) ? The Commissioner so determined, and the petitioner must demonstrate to the contrary. The respondent’s argument on the principal question is equally simple. He argues briefly that under section 115 (a) of the Internal Revenue Code a dividend is defined to be any distribution made by a corporation to its shareholders out of earnings and profits, while under section 115 (b) “every distribution is made out of earnings and profits to the extent thereof.” Hence, says the respondent, the amount credited to petitioner’s stock purchase account (i. e., the $30,130) to the extent of available earnings $27,972.96) is to be deemed a dividend distribution as determined, “unless he can affirmatively establish its character as a loan.” The petitioner’s position is that the amount was repayment of such loan. The parties do not differ as to figures. The respondent relies primarily upon Leland v. Commissioner, 50 Fed. (2d) 523, and Rheinstrom v. Connor, 125 Fed. (2d) 790. In the former, stockholders contributed quick assets as paid-in surplus, without the giving of notes to evidence obligation. Later corporate distributions in cash were authorized, to be paid out of the paid-in surplus. It was held there was a dividend, not repayment of loan. In the Rheinstrom case capital was reduced by $122,000 and the amount credited to earned surplus and later transferred to paid-in surplus. Years later $122,000 was distributed to the stockholders and the paid-in surplus account was canceled. Earnings in the year of distribution were greater than the amount distributed. It was held that there was dividend, not return of capital or repayment of debt, as argued by the stockholders. The weakness of the two cases to support the respondent’s argument is apparent: Neither involved any promise or agreement to pay back the contributions made by the stockholders. Since here the petitioner relies flatly upon an agreement shown by the directors’ resolutions of July 8,1932, the two cases offer no help on the problem. The petitioner, on his part, relies strongly on Weaver v. Commissioner, 58 Fed. (2d) 755. Therein the stockholders, in order to increase the corporation’s working capital, paid in $100,000, in proportion to stock. A verbal understanding existed among the stockholders that at some future date the sum contributed would be returned to them. The $100,000 was kept separate, in an account called “contributed surplus” and used in the corporate business. Several years later, by resolution, it was repaid to the stockholders. The court held that there was not a dividend, as contended by the Commissioner, but a loan, repaid, and that the stockholders did not receive taxable income. It is clear from the facts in that case that it is like this one, in that there is the element of agreement to return the contribution, as alleged in this matter, but that, unlike this case, no stock was there involved, there being merely loan of money, later repaid. After study of the facts here we are of the view that, though stock and not money, as in the Weaver case, was here “donated” to the corporation, that case is soundly applicable here. There can be no doubt that we have in this matter an agreement to make restitution for what was contributed, and not a mere contribution to surplus as in the Leland and Rheinstrom cases; and the fact that the matter starts with stock, instead of money as in the Weaver facts, seems no distinction. The agreement as shown by the minutes of July 8, 1932, was that there was “donation” of stock by the stockholders “giving them in exchange a contingent claim for services rendered to be paid in stock in the same amounts as were donated.” There is thus, despite the repeated use of the words “donation” or “donated,” no escape from the conclusion that there arose an obligation on the part of the corporation, to pay, in stock, a claim for which the stock was exchanged. The respondent does not argue that the claim payable was one for services rendered, apparently considering that because it was payable in stock it was a claim for stock, and we,, therefore, so consider the matter. We conclude that there was an agreement for return of stock. The facts show that the “donated” stock went into the treasury of the corporation. We must next consider the matter of how the obligation was met, in 1941, passing for the moment the effect of the transaction in 1933. What happened in 1941 may be viewed in two lights: Either as payment in money, because of credit given for $30,130 on petitioner’s subscription for approximately $104,000 in stock; or as return of the stock, in that petitioner did actually receive a stock certificate, for the whole amount subscribed for, and, therefore, in a sense at least, received such certificate to the extent of $30,130 of the subscription price, in return for the stock turned in to the treasury in 1932. In our view, the result was not such distribution as to be taxable dividend; for the petitioner received stock as provided by, the agreement in 1932. It is to be noted that there was no agreement to return the identical stock “donated,” but only that in payment of the “claim for services rendered” he receive “stock in the same amounts as were donated.” He donated both common and preferred stock, but could be repaid, for the claim, in “stock.” Since he received stock (and he did receive a certificate including coverage of $30,130 in stock without paying for it in 1941), we consider that, in the light of the agreement in 1932 for return of stock, the Weaver case is sound authority that there was no dividend. He did not, under the facts found here, merely contribute to surplus without agreement for return or reimbursement, as in the Rheinstrom and Leland cases. The respondent’s argument impliedly agrees that, if there was loan, the satisfaction thereof did not result in a dividend; and, in our view, there was such loan agreement. See George P. Pitkin, 31 B. T. A. 403; W. T. Wilson, 10 T. C. 251. There remains for consideration respondent’s argument that the effect of the transaction in 1933 was to wipe out the agreement made in 1932, because petitioner then received, share for share, stock instead of that “donated” in 1932. We do not regard the argument as valid. The agreement of 1932 did not say that stock should be returned share for share, but only that the claim be “paid in stock in the same amounts as were donated,” and on brief the respondent agrees that the “basis originally agreed upon * * * was that the face amount of the shares would be returned * * *,” but argues that “the recapitalization satisfied the prior obligation on the basis of share for share.” Beturn of one share of new $10 par stock, after the recapitalization in 1933, for eac'b of the $100 shares “donated” in 1932 clearly did not discharge the obligation in the agreement. The fact that Converse was eliminated as to his contribution, by an equal number of shares of the new $10 stock, is, in our view, neither controlling nor important, for that was the result of a settlement of matters in which he was interested, including Moorlane’s claim against another company, of which he was general manager, which claim was discharged by Converse’s turning in his stock and his rights under the agreement of 1932. What he saw fit to accept at that time for his claim does not help on the question here. In our opinion, the claim for return of stock in the amounts “donated” in 1932 was properly credited, as the petitioner argues, with the stock received in 1933, leaving $30,130 in stock still due to the petitioner. The partial payment of an obligation is not compensation for full release thereof, under law so well settled as not to require citations. Moreover, current treatment by the parties involved is to be considered, and there is nothing in the transaction in 1933 to indicate that it covered surrender of the previous right of Moorer and Koehler under the agreement of 1932. The resolution in 1933 as to reissuance of stock share for share was passed prior to reduction of the par value of the stock to $10, and it applied to stock to be surrendered, not stock already surrendered. In addition it is to be noted that S. D. Hunt is included among those named in the resolution on this point, and that he had not contributed any stock in 1932. Again, the resolution was to surrender “certain shares of stock * * * issued to them out of the surplus of the company * * *.” So far as the record here shows, on July 19, 1933, Moorer and Koehler, so far as the “donated” stock was concerned, had been issued nothing out of surplus. On the contrary, they had surrendered 213 shares, and it was in the treasury. The resolution did not mention the stock surrendered in 1932. Moreover, there was no consideration, if there had been any agreement to take one share of $10 stock instead of a share of $100 stock. We do not read the resolution as so providing, or as covering the stock surrendered in 1932, but as concerning some other stock, issued to Hunt, Moorer, and Koehler, and not otherwise appearing in this record. We conclude and hold that the petitioner did not in 1942 receive a dividend from Moorlane Co. by virtue of the credit upon stock subscription by him and receipt of stock by him. Reviewed by the Court. Decision 'will be entered for the petitioner.